IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

```
                                    )
MOHSIN RAZA,                        )
                                    )
                Petitioner,         )
V.                                  )        Criminal No. 1:15CR118
                                    )        Civil Action No. 1:19CV800
UNITED STATES OF AMERICA,           )
                                    )
                Respondent.         )
                                    )
```

### MEMORANDUM OPINION

This case is before the Court on Mohshin Raza's ("Petitioner") June 17, 2019 § 2255 motion filed with this Court to vacate his convictions and sentences, alleging that his counsel prior to Petitioner's indictment provided ineffective assistance of counsel, and Motion to Supplement the record.

Between a date earlier than May 2006 to a date after February 2007, Petitioner was a vice-president in charge of the operations of the SunTrust Mortgage office in Annandale, Virginia.  During that time, Petitioner's wife and two brothers-in-law worked at lesser positions within the same office. Petitioner and his wife moved to Texas prior to December 2014.

On December 14, 2014, the government sent Petitioner a letter telling him that he was under investigation for fraud and if he wanted

to resolve the matter prior to an indictment and possible arrest warrant being issued against him, he should have counsel contact the United States Attorney's Office in the Eastern District of Virginia. Petitioner hired Derek Andreson ("Andreson"), an attorney at Pillsbury Winthrop Shaw Pittman, LLP ("Pillsbury") to represent him. Andreson, in turn, enlisted the assistance of a senior partner at the firm, William Sullivan ("Sullivan"), and a junior associate to assist Andreson.

On January 28, 2015, Andreson, Sullivan, and the associate met with an Assistant United States Attorney (AUSA) and FBI Special Agent Javier Gonzalez for between one and two hours. The agent explained why he believed that the evidence showed that Petitioner had committed fraud in 11 mortgage transactions. The agent summarized the alleged fraud and showed documents to the attorneys to support the agent's recitation. The AUSA outlined the key points of a potential plea offer for the attorneys to convey to Petitioner. Petitioner would plead guilty to one count of wire fraud, in violation of 18 U.S.C. § 1343, admit his guilt to the 11 fraudulent transactions, and pay restitution for the losses related to those transactions. If Petitioner accepted the pre-indictment plea offer, the government would not only file no additional charges against Petitioner, but also likely close its investigation of Petitioner's three relatives.

Petitioner had known that the attorneys were going to meet with representatives of the government. Petitioner and his wife were awaiting a telephone call from Petitioner's attorneys following the meeting. Andreson, Sullivan, and their associate telephoned Petitioner and his wife. The attorneys explained to Petitioner what they had learned about the alleged fraud involving the 11 mortgage transactions. They told him about the outline of the potential plea offer. Petitioner and his wife told the attorneys that there had been a misunderstanding, and they wanted to prove their innocence. Petitioner was not interested in the plea offer. He said that he could not plead guilty to something that he did not do. During the telephone call, Petitioner focused on how to defeat the evidence of the 11 transactions and had no interest in discussing the plea offer in a significant way. Petitioner also expressed concern that the matter could affect his ability to remain in the United States.

On April 11, 2015, a grand jury returned an indictment against Petitioner, his wife, and his two brothers-in-law. All were charged with conspiring to commit wire fraud affecting a financial institution and wire fraud. The conspiracy charge identified 13 allegedly fraudulent mortgage transactions, 11 of which were the ones that the government had identified in the meeting on January 28, 2015. Petitioner and his co-defendants pleaded not guilty at their

3

arraignments. Thereafter, extensive discovery was provided to the defendants.

After the return of the indictment, Andreson moved to the law firm of Winston & Strawn, LLP.  Petitioner continued as Andreson's client.  Senior partner Thomas Buchanan joined Andreson as co-counsel for Petitioner. Petitioner's counsel worked with counsel for the other defendants as a joint defense team.  Throughout the pre-trial process, Petitioner maintained his innocence.  Petitioner told all counsel that there would be no discussions of pleas. Petitioner had discussions with his counsel instead about trying to resolve the case by paying restitution or agreeing to deportation. Andreson told Petitioner, however, that potential resolutions were not possible as long as Petitioner maintained his innocence. Nonetheless, Petitioner never admitted to his counsel that he had committed the charged offenses.

After Petitioner and his co-defendants were convicted at trial of conspiracy and substantive counts, Petitioner sent Andreson an email with a link to an article about a process allowing some innocent defendants to plead guilty without admitting their guilt. Andreson was aware, however, that the United States Attorney's Office for the Eastern District of Virginia had a practice of entering into plea agreements only with defendants who would admit their guilt.  This practice was consistent with the outlines of the plea offer presented

4

to Andreson earlier in January 2015. Andreson responded to Petitioner by telling him that Andreson could not have allowed Petitioner to plead guilty, because Petitioner had always insisted that he was not guilty.

On April 29, 2016, this Court sentenced Petitioner to serve two years in the custody of the Attorney General, to pay restitution and forfeiture, and to serve two years on supervised release following his release from custody.  The Court allowed Petitioner to serve the custodial portion of his sentence after his wife served her sentence. The defendants ultimately lost their appeals, and Petitioner served his sentence.

On June 17, 2019, Petitioner filed his § 2255 motion.  He alleged a single claim: his attorneys had been ineffective for failing to tell him about the outlines of the plea offer that the government had presented to counsel at the meeting on January 28, 2015.  In Petitioner's declaration supporting his motion, Petitioner claimed that he had first learned about the plea offer after he was convicted.  He did not allege the source of his information.  The terms of the outlined plea offer that Petitioner alleged in his § 2255 motion were fairly consistent with the terms of the actual offer, except that Petitioner did not include the requirement that he admit his guilt to the 11 fraudulent transactions.

At the evidentiary hearing before the Court on April 19, 2022, the Court heard the testimony of three witnesses. Sullivan and Andreson testified consistently with the facts stated above. Petitioner testified virtually from Pakistan, where he currently resides following his deportation from the United States. On June 4, 2022, the Petitioner filed a Motion to Supplement the record of the hearing on April 19, 2022. That Motion is granted, and the Court has considered those exhibits along with the other evidence in this matter.

Petitioner at the hearing, continued to maintain that his attorneys never told him about the outlines of the plea offer during his discussion with the attorneys on the telephone on January 28, 2015. Petitioner also testified that he was not familiar with the American criminal justice system at the time and was confused and upset during the telephone conversation.

Petitioner's denial that the attorneys did not tell him about the plea offer is not credible. Both attorneys clearly recall telling Raza about the outline of the plea offer. There is no evidence that either attorney was confused, upset, or otherwise impaired in their thinking at the time of the telephone call or when testifying. The weight of the evidence, therefore, establishes that the attorneys conveyed the outlines of the government's plea offer to Petitioner.

At the April 19, 2022 hearing, Petitioner testified that he would have admitted his guilt, as required by the terms of the outline of the plea offer, before the indictment had he known about the plea offer. His statement was very general, however. Not only did Petitioner fail to testify that he would have admitted his guilt to all 11 of the specific transactions that he was required to admit to under the terms of the proposed plea agreement, but he also did not identify a single transaction to which he would have admitted his guilt. When asked about whether he remembered the addresses of the transactions alleged in the indictment as fraudulent, Petitioner said that he did not. Petitioner's general statement at the hearing on April 19, 2022, that he would have admitted his guilt to committing fraud against SunTrust, is not persuasive evidence that seven years prior he would have admitted his guilt to the 11 specific fraudulent transactions.

Even if Petitioner's general statement were interpreted to be a claim that he would have truthfully admitted his guilt to each of the 11 fraudulent transactions prior to his indictment, his testimony was not credible. His prior attorneys testified that Petitioner maintained his innocence from the time that a summary of the government's evidence was first provided to him through his trial and sentencing. Prior to Petitioner's testimony on April 19, 2022,

7

there is nothing in the Court's record to suggest that Petitioner would have admitted his guilt to any fraudulent conduct. Furthermore, when Petitioner filed his § 2255 motion, he included a declaration. The declaration did not state that he would have admitted his guilt to the 11 transactions.  When the government's reply pointed out this omission, Petitioner replied to the government's pleading, but still did not state that he would have admitted his guilt.  In addition, Petitioner acknowledged in his testimony that he never told his attorneys that he was guilty.

Finally, the exchange of emails between Petitioner and Andreson in March 2016, between the date of the verdict and the sentencing date, casts more doubt on Petitioner's testimony. On March 9, 2016, Petitioner began the exchange with an email to Andreson suggesting the innocent people can plead guilty and including a link to an article on Alford pleas.  See North Carolina v. Alford, 400 U.S. 25 (1970). If Petitioner had been willing to admit his guilt prior to indictment, there would have been no reason for Petitioner in his email to have referred to innocent people pleading guilty. On March 10, 2019, at 2:07 p.m., Andreson responded that Petitioner had always maintained his innocence and said that it would have been an ethical violation for Andreson to have advised Petitioner to plead guilty to a crime that he denied that he had committed.  Petitioner's reply to Andreson at 3:00 p.m. the same day did not dispute that Petitioner

continued to maintain his innocence and appears to re-affirm that position. The weight of the evidence establishes that Petitioner was not willing to admit his guilt in 2015 to committing fraud with respect to the 11 transactions involved in the outlined plea offer.

Under 28 U.S.C. § 2255, a petitioner may attack his sentence or conviction on the grounds that it was imposed in violation of the Constitution or laws of the United States, the Court was without jurisdiction to impose such a sentence, the sentence exceeded the maximum authorized by law, or the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255; see also Hill v. United States, 368 U.S. 424, 426-27 (1962). The petitioner must prove the grounds for collateral relief by a preponderance of the evidence. Vaneter v. Boles, 377 F.2d 898, 900 (4th Cir. 1967); Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

To succeed on a claim of ineffective assistance of counsel, a petitioner must show that: (1) his counsel's performance was objectively unreasonable, and (2) his counsel's deficient performance prejudiced the defense. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). An ineffective counsel claim will fail if the petitioner cannot prove either deficient performance or sufficient prejudice. Id. at 700.

To succeed on a claim of ineffective assistance of counsel, a petitioner also must show that Strickland applies to his case.

9

Strickland held that ineffective assistance of counsel deprives a client of his Sixth Amendment right to counsel. Id. at 686. "This right, however, does not attach until adversarial judicial proceedings commence 'by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" United States v. Medley, 34 F.4th 326, 2022 WL 1483599 *4 (4th Cir. May 11, 2022), quoting Texas v. Cobb, 532 U.S. 162, 167-68 (1991). See also United States v. Olson, 988 F.3d 1158, 1163 (9th Cir. 2021) (rejecting claim that plea discussions prior to formal proceedings could be subject to ineffective assistance counsel claim); Turner v. United States, 885 F.3d 949, 951 (6th Cir. 2018) (en banc) (same). Cf. Roberts v. State of Maine, 48 F.3d 1287, 1291 (1st Cir. 1995) (right to counsel might exist in some pre-indictment settings); Matteo v. Superintendent, SCI Alban, 171 F.3d 877, 892 (3d Cir. 1999) (same); United States v. Larkin, 978 F.2d 964, 969 (7th Cir. 1992) (same).

Once the Sixth Amendment right to counsel attaches, a defense counsel is ineffective when counsel fails to convey a formal plea offer to his client. Missouri v. Frye, 566 U.S. 134, 145 (2012). Failure to convey an informal plea offer may still constitute ineffective assistance of counsel if a petitioner can prove that he was prejudiced. Merzbacher v. Shearin, 706 F.3d 356, 369-70 (4th Cir. 2013).

To prove prejudice, a petitioner must show "a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 456 U.S. at 634. A petitioner in Petitioner's position demonstrates prejudice by proving a reasonable probability that he would have accepted the plea offer, the government would not have withdrawn the offer, the Court would have accepted it, and the result of the criminal process would have been more favorable. Frye, 566 U.S. at 148.

The government's outline of a plea offer to Petitioner's counsel occurred before the government formally charged Petitioner in any manner. Accordingly, Petitioner's Sixth Amendment right to effective assistance of counsel had not attached at that time. His § 2255 motion must fail for that reason.

Sullivan and Andreson conveyed the terms of the government's outline of a pre- indictment plea offer to Petitioner during a telephone call following the meeting when counsel received the offer. Counsel, therefore, were not ineffective for failing to convey the offer even if Petitioner did have a Sixth Amendment right to counsel at the time. Petitioner's § 2255 motion must fail for that reason, too.

During the telephone call with counsel on January 28, 2015, Petitioner insisted that he was innocent of any charges that the

11

government had outlined to his counsel and did not have an interest in pleading guilty. Subsequently, throughout the proceedings, Petitioner continued to maintain to counsel that he was innocent. Even if Petitioner did not learn about the plea offer until after he was convicted, he suffered no prejudice. The outlined plea offer required that Petitioner admit his guilt to committing fraud during 11 different mortgage transactions. Petitioner would not have accepted the government's offer, because Petitioner was not prepared to admit his guilt pre- indictment to committing fraud during the 11 transactions.  Petitioner's § 2255 motion must fail, therefore, for this third reason: his failure to prove prejudice.

For the foregoing reasons, the relief requested by Petitioner in his § 2255 motion must be denied.

An appropriate Order shall issue.

CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
September /9 , 2022

12